UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

TERRI LYNN WORLEY,                    )
                                       )
            Petitioner,                )
                                       )
v.                                     )         Nos.   2:15-CR-12 (10)
                                       )                2:15-CV-305
UNITED STATES OF AMERICA,              )                *Judge Jordan*
                                       )
            Respondent.                )

## MEMORANDUM OPINION

Before the Court is Petitioner Terri Lynn Worley's pro se motion to vacate, set aside, or

correct her sentence under 28 U.S.C. § 2255 [Doc. 293],[1] her amended §2255 motion to vacate

[Doc. 319], for which she was granted leave to file [Doc. 315], and a proposed second amended §

motion to vacate [Doc. 326].  The United States responded in opposition to Petitioner's first two

submissions [Docs. 311, 321].  Petitioner replied to the Government's first response [Doc. 314].

The Court finds the materials thus submitted, together with the record of the underlying

criminal case, conclusively show that Petitioner is not entitled to relief on the claims asserted in

her motions.  Accordingly, the Court will decide this matter without an evidentiary hearing.  *See*

*United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993).  For the reasons discussed below,

the Court will find that Petitioner's § 2255 motion and amended § 2255 motions are without merit

and, thus, will **DENY** and **DISMISS** the motions **WITH PREJUDICE**.

---

[1] All docket references are to the document numbers in Petitioner's underlying criminal
case, Case Number 2:15-CR-12.

# I.     PROCEDURAL AND FACTUAL BACKGROUND

On February 10, 2015, a federal grand jury indicted Petitioner and nine co-defendants with various offenses [Doc. 3].  Those offenses involved a scheme to file fraudulent federal income tax returns to the Internal Revenue Service ("IRS"), using stolen identities and falsely claiming entitlement to refunds [*Id.*].  For her part in the scheme, Petitioner was charged with one count of conspiracy to commit wire fraud, one count of conversion of money from the United States, and one count of money laundering (Counts 1, 9, 10) [*Id.*].  On June 11, 2015, Petitioner agreed to plead guilty, pursuant to a negotiated plea agreement, to Count 9, i.e., conversion of money from the United States in violation of 18 U.S.C. § 641, as charged in the indictment [Doc. 99, Plea Agreement, ¶ 1.a], with the remaining counts to be dismissed at sentencing [*Id.*, Plea Agreement, ¶ 2].  As a factual basis for her pleas, Petitioner stipulated that the offense occurred between January 1, 2008, through March 1, 2012, and to the following additional facts:

Petitioner acknowledged that she had been recruited in the offense by two co-defendants who asked her to provide Social Security numbers, addresses, and other personal identifying information of other individuals so that the co-defendants could prepare and submit false federal income tax returns to the IRS [*Id.*, Plea Agreement, ¶ 4(b)].  Petitioner admitted that she knowing prepared and electronically submitted false federal income tax returns to the IRS and that these returns generated illegitimate federal income tax refunds paid by the Department of the Treasury and electronically transferred to bank accounts at three separate banks (one of which was Bank of America), which Petitioner controlled [*Id.*, Plea Agreement, ¶ 4(c)].

When the funds were deposited to her bank accounts, Petitioner withdrew them in cash and gave the cash to the two co-defendant recruiters and to other persons that they designated, or retained it for herself [*Id.*, Plea Agreement, ¶ 4(d)].  Sometimes, Petitioner also received payment

for the services she provided in connection with the transactions [*Id.*]. Petitioner admitted that she knew that the funds involved in an electronic transfer of $ 9,999 to her Bank of America account on October 6, 2010, belonged to the United States and that she knowingly converted those funds to the use of another [*Id.*, Plea Agreement, ¶ 4(e), (f)]. Petitioner stipulated that the offense caused a loss in excess of $120,000, but less than $200,000, and that it involved more than ten victims, but fewer than fifty [*Id.* Plea Agreement, ¶ 8(b), (c)]. The plea agreement provided that, in exchange for her guilty plea, Petitioner waived her right to file a § 2255 motion or a collateral attack on her conviction or sentence, excluding claims of prosecutorial misconduct or ineffective assistance of counsel [*Id.*, Plea Agreement, ¶ 14(b)].

On June 25, 2015, two weeks after entry of the plea agreement, Petitioner pled guilty to the § 641 money-conversion-charge in Count 9 of the indictment [Doc. 113]. The Court accepted Petitioner's guilty plea and allowed her to remain free on bond [*Id.*]. Thereafter, the United States Probation Office issued a Presentence Investigation Report ("PSR") to assist the Court in sentencing Petitioner [Doc. 173, PSR (sealed)].

Using the amount of loss and the number of victims stipulated in the plea agreement [*Id.*, PSR, ¶ 8(b)(c)], the probation officer who prepared the PSR determined that Petitioner's base offense level was 18 [*Id.*, PSR ¶¶29-31, 35]. A three-level reduction for acceptance of responsibility yielded a total offense level of 15, which, along with a criminal history category of II, resulted in an advisory Guidelines range of 21 to 27 months [*Id.*, PSR ¶¶ 33, 44, 58]. However, because Petitioner's bond was revoked based on violation of the conditions of her pretrial release [Doc. 183], the United States moved to deny Petitioner a one-level reduction for acceptance of responsibility, leaving intact the two-level reduction contained in the PSR [Doc. 195].

The absence of the one-level reduction would increase Petitioner's total offense level to 16. The Court overruled Petitioner's objections to the PSR (specifically, to the probation officer's determination that her criminal history placed her in a category II); granted the government's motion to deny her a one-level reduction for acceptance of responsibility; dismissed the remaining counts upon oral motion of the government; and imposed a 24-month term of imprisonment—the lowest sentence in Petitioner's Guidelines range—and a 3-year term of supervised release [Doc. 244 (Judgment); Doc. 245 (Statement of Reasons) (sealed)].

Petitioner did not file a direct appeal. Instead, she submitted this pro se § 2255 motion to vacate and two amended pro se motions to vacate [Docs. 293, 319, 326].

## II.    STANDARD OF REVIEW

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Jefferson v. United States*, 730 F.3d 537, 549 (6th Cir. 2013) (applying *Brecht* test to § 2255 motion).

To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error that violated due process. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Riggs v. United States*, 209 F.3d 828, 831 (6th Cir. 2000). A petitioner "must clear a significantly higher hurdle than would exist

4

on direct appeal" to secure collateral relief. *United States v. Frady*, 456 U.S. 152, 166 (1982); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *Frady*, 456 U.S. at 166).

When a defendant files a § 2255 motion, she must set forth facts which entitle her to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

Claims other than those of ineffective assistance of counsel are procedurally defaulted if not raised on direct appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). "In the case where the defendant has failed to assert h[er] claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion [s]he also must show either that (1) [s]he had good cause for h[er] failure to raise such arguments and [s]he would suffer prejudice if unable to proceed, or (2) [s]he is actually innocent." *Regalado*, 334 F.3d at 528; *see also Bousley*, 523 U.S. at 622-23. The hurdle a petitioner faces to overcome a procedural default is "intentionally high[,]…for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000).

## III. DISCUSSION

### A. Waiver

As noted earlier in this opinion, in paragraph 14(b) in the plea agreement [Doc. 35], Petitioner waived her right to file a motion to vacate, except as to claims of ineffective assistance

and prosecutorial misconduct. It is well recognized that a party may waive a provision intended for her benefit in a contract or statute. *Shutte v. Thompson*, 82 U.S. 151, 21 L.Ed. 123, 15 Wall. 151 (1872). Even fundamental constitutional rights may be waived, and the waiver is enforceable if it is made knowingly and voluntarily. "[A] defendant's informed and voluntary waiver of the right to collaterally attack a conviction and sentence is enforceable." *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007); *accord Davila v. United States*, 258 F.3d 448, 450-52 (6th Cir. 2001); *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999). Therefore, if Petitioner understood the terms of the plea agreement and made the waiver of her right to file a § 2255 motion voluntarily and knowingly, the waiver is valid and enforceable.

Here, there is little doubt that Petitioner knowingly and voluntarily entered into the waiver provision in her plea agreement. Although no transcript of the Court's change of plea hearing is in the record, this Court recalls that it verified, in testimony under oath by Petitioner, that she had read the plea agreement or that the plea agreement had been read to her, that she discussed the plea agreement with counsel and understood all its provisions, and that she had had fully discussed the waiver provision with her attorney. Thus, all claims, save the ones asserting ineffective assistance of counsel (which fall within the limited category of claims where she retained a right to file a § 2255 motion), are barred by the waiver provision.

## B.    Law and Analysis

Even if not waived by the collateral-review waiver provision in the plea agreement, the claims of ineffective assistance presented in Petitioner's § 2255 motion and § 2255 amended motions to vacate (as elaborated on in the memorandum in support of the first amended § 2255 motion) are groundless. Petitioner's other claims, i.e., those not alleging ineffective assistance,

are conclusory, barred by either waiver or a procedural default, or are otherwise flawed and also without merit.  The Court addresses each claim in turn.

1.      **Advance Notice** [Doc. 293, § 2255 Motion, Ground one]

Petitioner claims that the third element "is missing of the plea deal," though she purports that an appeals court has found the element to be essential in a tax conviction [Doc. 293 at 4].  The missing element, according to Petitioner, is that she was not given notice by Facsimile or email that she was under investigation by the IRS [*Id.*].

The Court finds this allegation factually deficient and conclusory.  Petitioner has failed to describe the third element that is missing from the plea agreement, to cite the authority (i.e., the unknown appeals court's decision) which she contends has held that such an element is essential to the only relevant conviction in this case—the § 641 offense, to assert that she was not advised as to all elements of the § 641 offense or did not understand such advice, or to show how the purported missing element impacted the validity of her plea.  *See Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) (stating that claims asserted in a § 2255 motion "in the form of conclusions without any allegations of facts in support thereof" are "legally insufficient to sustain review" of the motion).

Furthermore, the elements of an offense under § 641 were listed Petitioner's plea agreement, as follows:

> 1)   The defendant knowingly converted to defendant's use or converted to the use of another money with the intention of depriving the owner of the use or benefit of the money;
>
> 2)   The money belonged to the United States; and
>
> 3)   The value of the money was more than $1,000

[Doc. 99, Plea Agreement, ¶ 3(A)(1)-(3)].

Thus, if it is the third element of the § 641 offense which Petitioner now charges was omitted from her plea deal, she stipulated to that element (i.e., the value of the money was more than $1,000) and to the other two elements as well, as part of her plea bargain [*Id.*, Plea Agreement, ¶ 4]. Hence, her assertion that that the third element of her offense is missing is groundless because she admitted to facts establishing all elements of the crime. "It is not error for a court to sentence a defendant on the basis of facts to which the defendant himself admitted." *United States v. Salas*, 281 F. App'x 496, 500 (6th Cir. 2008) (citing *United States v. Booker*, 543 U.S. 220, 244 (2005)); *see also United States v. Poole*, 97 F. App'x 587, 588 (6th Cir. 2004) (denying relief on direct appeal where defendant admitted under "oath the facts establishing the essential elements of the offenses"); *cf., Perrone v. United States*, No. 09-CR-30016-DRH, 2016 WL 2910004, at *5 (S.D. Ill. May 19, 2016) (denying § 2255 relief where a petitioner admitted to the elements of the crime in a plea agreement) ), *aff'd*, 889 F.3d 898 (7th Cir. 2018).

In its research, the Court, has been unable to find a case that requires, as a precondition to launching an investigation into a possible § 641 offense, that the IRS provide notice to the target of such an investigation. However, Respondent has pointed to a case involving a prosecution under 26 U.S.C. § 7212(a), a statute that criminalizes an attempt to obstruct the due administration of federal income tax laws, wherein the Sixth Circuit held that a conviction under that statute requires proof that a defendant "is acting in response to some pending IRS proceeding of which he is aware" [Doc. 311 at 6 (citing *United States v. Miner*, 774 F.3d 336, 342-43 (6th Cir. 2014))]. *See also United States v. Faller*, 675 F. App'x 557, 561 (6th Cir. 2017) (holding that § 7212 offense requires the government to show that a defendant "knew of a pending IRS proceeding when he engaged in the conduct that impeded the IRS's ability to administer the revenue code") (citing *Miner,* 774 F.3d at 342). If Petitioner's § 2255 claim regarding a lack of notice that she was a

target in an IRS investigation was based on *Miner*, her reliance on that case is misplaced. *Minor* does not apply to Petitioner because she was not convicted of a tax offense, *see* 26 U.S.C. § 7201, *et seq.*; she was convicted of an offense under 18 U.S.C. § 641, a crime classified in the United States Code as a crime of theft.

Moreover, Petitioner waived any claim that an element of her offense was absent from the plea agreement. This is so because "a valid guilty plea relinquishes any claim that would contradict the 'admissions necessarily made upon entry of a voluntary plea of guilty.'" *Class v. United States*, 138 S. Ct. 798, 805, 200 L. Ed. 2d 37 (2018) (quoting *United States v. Broce*, 488 U.S. 563, 573-74 (1989)). As noted, Petitioner admitted in her plea agreement to the elements constituting the offense, and she was advised of those elements and admitted to them at her plea colloquy. The law is settled that, following the entry of an unconditional plea, a petitioner thereafter "may only attack the voluntary and intelligent character" of the plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The question thus becomes whether Petitioner's plea was voluntary and knowing.

Before accepting a guilty plea, a district court must advise the defendant of certain rights, address the defendant in open court, determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement), and determine that a factual basis exists for the plea. Fed. R. Crim. P. 11(b). The Court typically engages in a colloquy with a defendant concerning her plea agreement and guilty plea and to ascertain whether she understands the nature of the crime charged, the penalties provided by law, the constitutional rights she possesses and is relinquishing by pleading guilty, and the consequences of her guilty plea; that there is a factual basis for concluding that she committed the crime; that no threats or promise has induced her plea; and that she is pleading guilty voluntarily and knowingly.

The Court scrupulously complies with Rule 11 of the Federal Rules of Criminal Procedure governing acceptance of guilty pleas; it did so here [Doc. 113]; and Petitioner is bound by her sworn statements she made in response to the Court's inquiry under Rule 11. As the Supreme Court has explained, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Finally, not only has Petitioner waived her claim, but she has procedurally defaulted it as well. This is so because, notwithstanding the fact that a provision in the plea agreement also waived Petitioner's right to file a direct appeal [Doc. 99, ¶ 14(a)], she still could have presented the claim on direct appeal but she did not. *See Bookwalter v. United States*, No. 2:14-CR-82, 2018 WL 2407525, at *3, 5 (E.D. Tenn. May 25, 2018) (finding that argument not raised on direct appeal was procedurally defaulted, even though the petitioner had waived his right to file an appeal in the plea agreement); *Solomon v. United States*, No. 2:05-CR-92, 2011 WL 5434273, at *7 (E.D. Tenn. Nov. 9, 2011) (same). No cause and prejudice has been alleged or shown, and this claim additionally is barred by Petitioner's procedural default.

### 2.     Ineffective Assistance of Counsel

A petitioner alleging ineffective assistance must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *id.*, as measured by "prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). A court must presume that counsel's assistance was effective, and a petitioner bears the burden of showing otherwise. *Mason v.*

*Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998) (instructing reviewing courts to "remember that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'") (quoting *Strickland*, 466 U.S. at 690); *see also Strickland*, 466 U.S. at 689 (directing that courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)). "[T]he constitutional right at issue here is ultimately the right to a fair trial, not to perfect representation." *Smith v. Mitchell*, 348 F.3d. 177, 201 (6th. Cir 2003) (citing *Strickland*).

Second, a petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *id.*, and "requires a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citation and internal quotation marks omitted). In a guilty plea context, to establish prejudice a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Yet, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). Furthermore, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.

a. **Bullying, Threatening, and Failing to Perform Legal Research** [Doc. 293, §
2255 Motion, Ground two]

Petitioner alleges that counsel bullied and threatened her and failed to perform legal
research that would have unearthed a court decision that, in turn, would have shown her conviction
to be unsustainable [Doc. 293 at 5]. Petitioner submits that she has letters to prove her claim [*Id.*]
but she has not supplied those letters to the Court.

Absent any allegations of fact to show the precise conduct on the part of counsel that could
viewed as bullying and threatening that falls below the professional norms of legal representation
of a criminal defendant, this claim is conclusory. Conclusory claims such as this one offer no basis
for relief. *Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) (per curiam) (finding that a claim
unsupported by proof or any reference to such proof is legally insufficient to sustain a § 2255
review).

Equally unsupported by the necessary factual contentions is the allegation that counsel did
not find a court decision that would have fatally undermined her conviction. Even if the claim
were not conclusory and if the Court and Respondent have correctly divined that the court decision
to which Petitioner refers is *Minor*, that decision is irrelevant to Petitioner's conviction. Thus, had
counsel found the *Minor* decision through conducting legal research, he likely would have
concluded that case had no bearing on Petitioner's § 641 conviction. Counsel cannot be ineffective
for the failure to pursue a claim which has no legal basis. *See Mapes v. Coyle*, 171 F.3d 408, 413
(6th Cir. 1999) (no constitutional deficiency in failing to raise groundless issues).

**b. Failure to Consult about Appeal; Verbal Abuse; Coercion to Sign Plea Agreement; Lack of Communication; Lack of Defense; Failure to Object; and Mental Instability** [Doc. 319, Amended § 2255 Motion, Ground one]

In Petitioner's first amended § 2255 motion, she merely lists the above deficiencies as illustrations of ineffective assistance and provides few to no facts to sustain her naked allegations of attorney error [*Id.* at 4]. The claims are slightly fleshed out in the memorandum brief Petitioner filed in support of the above claims [Doc. 320].

**i. Failure to Consult about Appeal**

Petitioner adds a few facts to her contention that counsel failed to consult about an appeal by asserting that "[w]hen the time came to discuss an appeal, he was less than open," and that he "refused to discuss it, to notify her of her full rights to do so" [Doc. 320 at 2].

"[A] lawyer who disregards specific instructions from a defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Regaldo v. United States*, 334 F.3d 520, 524-25 (6th Cir. 2003). Where counsel fails to file an appeal after being specifically instructed to do so, a defendant is ordinarily entitled to a delayed direct appeal, regardless of whether such an appeal would be meritorious. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *accord Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998). Counsel's constitutional obligation to consult with a defendant regarding an appeal arises only when there is reason to believe that a rational defendant would want to appeal or that this particular defendant reasonably demonstrated to counsel that she was interested in appealing. *Roe*, 528 U.S. at 480.

Here, Petitioner does not explain what she means by her allegation that counsel "was less than open" regarding an appeal nor does she elaborate on her contentions that counsel "refused" to discuss an appeal with her or notify her of her right to appeal." Therefore, the allegations remain

conclusory and provide no basis for relief, especially in the absence of any factual assertions from which the Court can infer that a rational defendant would want to appeal or that Petitioner reasonably demonstrated to counsel that she was interested in appealing.

Even if Petitioner's assertions were not conclusory, she cannot show prejudice because she waived her right to appeal in the negotiated plea agreement, except for a challenge to a sentence imposed above her sentencing guideline range or in excess of the statutory maximum [Doc. 99, ¶ 14(a)]. As noted previously, Petitioner acknowledged during the plea colloquy that she had read the plea agreement or that the plea agreement had been read to her, that she discussed the plea agreement with counsel and understood all its provisions, and that she had had discussed the appeal and collateral review waiver provisions with her attorney. At sentencing, the Court typically discusses a defendant's right to appeal, the time for filing an appeal, and the assistance to be provided by the Clerk's Office in connection with an appeal. The Court discerns no reason why it would have departed from the advice it routinely gives. Therefore, since Petitioner is not serving a sentence imposed above her sentencing guideline range or above the statutory maximum, she was not prejudiced by counsel's failure to consult with her regarding a nonexistent opportunity to appeal. This claim is groundless.

### ii.     Verbal Abuse

Petitioner's memorandum brief provides some factual elaboration for her contention that counsel was verbally abusive toward her in that she maintains that counsel remarked to her, "I don't know who raised you but if I would have you be a better person than you are" and "I promise you will spend many many years in Federal prison" [Doc. 320 at 1]. Petitioner argues that these remarks were coercive, but she has failed to explain the circumstances surrounding the remarks or identify the act which she felt she was being coerced into engaging. If the latter alleged advice

concerning a possible sentence was given by counsel prior to Petitioner's decision to plead guilty to Count 9, when she was facing charges of conspiracy to commit wire fraud (Count 1) and conspiracy to launder money (Count 10) and a maximum 20-year sentence for each offense, 18 U.S.C. §§ 1349, 1343 (Count 1), and §§ 1956(a)(1), 1956 (h) (Count 10), then the Court would find that "correctly informing a defendant that he may face a greater sentence after conviction at trial is not coercion, and in fact, failure to do so may qualify as ineffective assistance of counsel." *United States v. Taylor*, 254 F. Supp. 3d 145, 159 (D.D.C. 2017), *appeal dismissed*, No. 17-3055, 2018 WL 4099683 (D.C. Cir. July 23, 2018).

More important, Petitioner has not shown that these two comments adversely affected counsel's performance as her attorney. While the first remark, if made, may have been unprofessional and uncaring, Petitioner has not shown that it ensued in conduct on the part of counsel that "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688; *cf. Frazer v. United States*, 18 F.3d 778, 783 (9th Cir. 1994) (finding that counsel gave ineffective assistance by engaging in a "verbal assault manifesting explicit racial prejudice and threatening to compromise the client's rights" by being very ineffective if client insisted on going to trial). Even if counsel's performance was deficient, Petitioner has made no allegation of prejudice ensuing from such a sub-par performance. This claim lacks merit.

### iii.     Coercion to Sign Plea, Lack of Communication, Failed to Defend

Because the sparse factual development of these sub-claims of ineffective assistance are interconnected in Petitioner's supporting memorandum [Doc. 320], the Court has combined them for purposes of discussion. With respect to these claims, Petitioner alleges as follows:

> The next thing to be discussed was a plea and telling movant to "just sign." There was a continued lack of communication between movant and counsel. The counsel of record provided little or no defense. His only concern was getting a plea and getting it signed, no real need for a defense.

[Doc. 320 at 1].

Petitioner does not provide any details to show how counsel's directive to her to "just sign" amounted to a deficient performance or ensued in any prejudice. Similarly, Petitioner does not explain what information, evidence, or advice counsel failed to communicate to her that adversely affected her case. Likewise, Petitioner does not allege that counsel was unreceptive or rejecting of any attempts on her part to contact him, to consult with him, or otherwise to communicate with him. Petitioner does not suggest any defense that was available to her that counsel failed to investigate and does not identify any existent defense that was likely to have been successful at trial, had there been one. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (observing that prejudice from counsel's failure to advise a defendant who pled guilty "of a potential affirmative defense" requires a showing "the affirmative defense likely would have succeeded at trial"); *United States v. Cronic*, 466 U.S. 648, 657 n. 19 (1984) (where there is no bona fide defense to charge, counsel not required to perform a "useless charade" by inventing one).

In short, this set of claims of attorney shortcomings lacks sufficient factual elaboration and, thus, is conclusory. Because a petitioner bears the burden of articulating sufficient facts to state a viable claim for relief under 28 U.S.C. § 2255, Petitioner's conclusory statements regarding counsel's three failings does not state a cognizable § 2255 claim. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972). Even if the claims were not conclusory, they are devoid of any facts from which the Court reasonably could infer that counsel's performance was deficient or that any deficiency of performance resulted in prejudice.

### iv.     Failure to Object

Petitioner asserts that counsel did not want to object to "anything" in her PSR [Doc. 320 at 1]. More specifically, Petitioner maintains that, during sentencing, she had "a number of concerns that were incorrect or inappropriate that he failed to object to at the time" [*Id.* at 1-2]. Likewise, Petitioner contends that she "had many questions about her criminal history which was raised to a 2 (two) without clear cause or explanation" but that "when it was questioned counsel just stated, 'I can't argue with that your honor'" [*Id.* at 2].

The PSR reflects that the probation officer assigned one criminal history point, under § 4A1.1(c) of the United States Sentencing Guidelines ("USSG"), for Petitioner's April 6, 2009, Greene County General Sessions Court conviction for driving under the influence ("DUI"), for which Petitioner received an 11-month, 29-day sentence, with all but two days suspended [Doc. 173, PSR, ¶ 45]. Two criminal history points were added, pursuant to USSG 4A1.1(d), because Petitioner committed the § 641 federal offense while she was under the DUI state sentence [*Id.*, PSR, ¶ 46]. Thus, according to the PSR, Petitioner's total history score was three, which establishes a criminal history category of II [*Id.*, PSR, ¶ 48].

The guideline under which the first point was added, USSG § 4A1.1(c), provides, in relevant part, that one point is to be added "for each prior sentence not counted in (a) or (b)." Section 4A1.1(a) instructs that three points are to be added "for each prior sentence of imprisonment exceeding one year and one month," and § 4A1.1(b) directs that two points are added "for each prior sentence of imprisonment of at least sixty days not counted in (a)." *See* USSG §§ 4A1.1(a) and 4A1.1(b). The PSR did not assign Petitioner any criminal history points under either USSG § 4A1.1(a) or § 4A1.1(b). Therefore, because Petitioner's 2-day sentence of

imprisonment for her DUI conviction was a prior sentence not counted in subparts (a) or (b) of §

4A1.1, the one criminal history point was correctly assigned in the PSR under § 4A1.1(c).

Similarly, USSG § 4A1.1(b) provides for the addition of two points if the instant offense

was committed while under any criminal justice sentence, including probation, parole, supervised

release, imprisonment, work release or escape status. Petitioner stipulated, in her plea agreement,

that her § 641 offense occurred between January 1, 2008, through March 1, 2012 [Doc. 99, Plea

Agreement ¶4(a)]. The DUI conviction occurred on April 6, 2009 and sentence was imposed on

that date. Therefore, because Petitioner admitted that her § 641 offense was committed January 1,

2008, through March 1, 2012, a period that included April 6, 2009, and the following eleven

months and twenty-nine days, while she was under the DUI sentence, she was correctly assessed

two criminal history points under § 4A1.1(d).

In sum, the probation officer correctly assigned Petitioner one and two criminal history

points respectively, appropriately calculated her total history score, and properly concluded that

Petitioner's criminal history category was II. *See* USSG, Sentencing Table. Because Petitioner's

criminal history category was accurately calculated under the applicable Sentencing Guidelines,

there was nothing to which counsel could have objected.

Counsel has no duty to proffer an objection for which there is no good-faith factual support

to avoid a charge of ineffective representation. *See Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir.

1986) (attorney has no duty to raise baseless and frivolous issues). Because Petitioner's claim is

meritless, her attorney did not render a deficient performance by failing to advance it. *See Mapes*

*v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999) (no constitutional deficiency in failing to raise meritless

issues on appeal). Nor can it be said, or even alleged with a modicum of candor or good faith, that

any prejudice ensues from a failure to make a groundless objection. *See, e.g., Hoffner v. Bradshaw*,

622 F.3d 487, 499 (6th Cir. 2010) (explaining that counsel cannot be held constitutionally ineffective for failing to pursue a meritless claim or raise a meritless objection); *United States v. Fry*, 831 F.2d 664, 669 (6th Cir. 1987) (failure to raise a meritless objection at sentencing not ineffective assistance).

### v. Mental Instability

Petitioner asserts that she questions counsel's work, mental ability, and mental stability during the course of her case and that his representation "left much to be desired" [Doc. 320 at 2]. Petitioner also maintains that she was not afforded her fundamental right to "effective counsel" [*Id.*]. Again, Petitioner has not supplied the court with any basis in fact for concluding that counsel suffered from any mental infirmities. As to the adequacy of counsel's work, that issue is reviewable only when a petitioner alleges errors that are "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. As to this claim, Petitioner has not identified any specific errors on the part of her attorney that would support that counsel's performance was deficient in any respect, much less that any prejudice accrued as a result of counsel's unidentified missteps.

This claim is conclusory and it also lacks merit.

### 3. Criminal History Claim [Doc. 319, Amended § 2255 Motion, Ground two]

Petitioner alleges a freestanding criminal-history claim that is independent of her claim that her attorney was ineffective for failing to object to her criminal history in the PSR. In the instant claim, Petitioner asserts that her criminal history was miscalculated, without pointing to any specific error in her criminal history calculation. That omission renders any analysis of the purported miscalculation impossible. Furthermore, the Court has already found that the probation

officer correctly calculated Petitioner's criminal history points. This claim likewise is conclusory and meritless.

Furthermore, as United States points out in its brief, claims based on missteps in the application of the sentencing guidelines are not cognizable on collateral review, *see Porter v. United States*, No. 2:09-CR-31, 2015 WL 1033881, at *5 (E.D. Tenn. Mar. 9, 2015) (listing cases), and similarly such claims are procedurally defaulted if not raised on direct review. *See Bousley v. United States*, 523 U.S. 614, 619 (1998); *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000).

Petitioner also contends, in her supporting memorandum [Doc. 320], that her criminal history must be revisited under *Johnson v. United States*, 135 S. Ct. 2551 (2015), *Welch v. United States*, 136 S. Ct. 1257 (2016), and possibly under *Pawlak v. United States*, 822 F.3d 902 (6th Cir. 2016) [*Id.* at 2]. *Johnson* held that the residual clause in the Armed Career Criminal Act ("ACCA") was unconstitutionally vague and "that imposing an increased sentence under the residual clause . . . violates the Constitution's guarantee of due process." *Johnson*, 135 S. Ct. at 2563. *Welch* made *Johnson*'s holding retroactive on collateral review. *Welch*, 136 S. Ct. at 1265. Petitioner, as the United States argues, was not sentenced under the ACCA, but instead under the guidelines. *Pawlak* , which held that the *Johnson* holding applied to a guidelines sentence, was abrogated by the Supreme Court in *Beckles v. United States*, 137 S. Ct. 886 (2017). None of these cases is helpful to Petitioner, and the claim based on those decisions is totally frivolous, as it lacks any legal basis.

Thus, this claim is conclusory, meritless, not cognizable, and procedurally defaulted, and the *Johnson*-based part of the claim is totally frivolous.

### 4.    Sentencing Disparity[2]

In Petitioner's amended § 2255 motion, she alleges that other defendants who were charged with the same crime as she was and who were more involved in the crime than she was received lesser terms of imprisonment and supervised release [Doc. 319 at 8].  In her memorandum in support of the amended § 2255 motion, Petitioner maintains that factors in 18 U.S.C. § 3553(a) to be considered in sentencing a criminal defendant are disparity and whether the sentence is harsher than is necessary [Doc. 320 at 3].  Petitioner argues that, since those other defendants were equally situated, the Court should consider whether "a possible departure or reduction are in order" [*Id.*].

The sixth subsection in § 3553(a) instructs that, among other factors, "the court, in determining the particular sentence to be imposed shall consider . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).

As noted earlier in this opinion, a claim not presented on appeal when it could have been presented is procedurally defaulted and may not be reviewed in a § 2255 motion, absent a showing of cause and actual prejudice to excuse a failure to raise the claim previously.  *Bousley*, 523 U.S. at 619; *Elzy*, 205 F.3d at 884.  Sentencing claims are to be raised on direct appeal.  *Wheeler v. United States*, 329 F. App'x 632, 634-36 (6th Cir. 2009).  Absent cause and prejudice, such claims cannot be afforded collateral review.  *Id.*    No cause or prejudice has been shown and federal review is now barred by Petitioner's procedural default.

---

[2]  Ground four in Petitioner's amended § 2255 motion is labeled as "Disparagy," [Doc. 319 at 8], and the supporting argument contained in her memorandum, likewise, discusses "disparagy" [Doc. 320 at 3]. It is obvious that Petitioner  has misspelled the word "disparity" as "disparagy" and equally clear that she is raising a claim regarding the alleged disparity between her sentence and those of her co-defendants.

Even if the claim were not procedurally defaulted, it is meritless. As the United States points out in its response to Petitioner's amended § 2255 motion, the sentencing disparities referenced in § 3553(a)(6) are pegged to national disparities, not disparities between specific cases [Doc. 321]. *See United States v. Mikowski*, 332 F. App'x 250, 255 (6th Cir. June 3, 2009) (listing cases).

This claim has been procedurally defaulted and, alternatively, it lacks merit.

### 5. Sentence Reduction Claims

#### a. Loss Revision Table

In her memorandum in support of her amended § 2255 motion, Petitioner first alleges that the loss revision table was revised in November 2015, and that "some point reduction is in order for the movant," which she asserts should be "a minimum of a 2 (two) point reduction" [Doc. 320 at 2-3]. As Respondent correctly argues, Petitioner has not identified the amendment upon which she is relying and the Court finds that this omission renders her claim conclusory. A successful § 2255 claim must be clothed with facts that show entitlement to relief. *See* Rule 2(b)(2), Rules Governing Section 2255 Proceedings (requiring a movant to "state the facts supporting each ground").

Moreover, as Respondent points out, a request to reduce a sentence must be brought by filing a motion for reduction of sentence under 18 U.S.C. § 3582(c)(2). Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 2685, 2690 (2011) (internal citation and quotation marks omitted). One exception is identified in 18 U.S.C § 3582(c)(2):

[I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . , the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

As the above discussion makes clear, Petitioner's request for a reduction of sentence has a home in a § 3582(c) motion, but not in a § 2255 motion. This request is not a cognizable claim that is reviewable in a motion to vacate. *Coleman v. United States*, No. 2:14-CR-28-RLJ-MCLC, 2018 WL 3150452, at *8 (E.D. Tenn. June 27, 2018) (explaining that a sentence reduction request is not cognizable in a § 2255 motion), *dismissed in part*, No. 2:14-CR-28-RLJ-MCLC, 2018 WL 3625830 (E.D. Tenn. July 30, 2018).

### b. Minor Role Adjustment

In Petitioner's second amended § 2255 motion, she presents the sole claim that she should receive a minor role adjustment to her sentence because of her "limited scope of activity in [the] enterprise" [Doc. 326]. Petitioner asserts that her motion is timely because the adjustment was previously unavailable to her [*Id.* at 10]. The Court agrees that the motion is timely, not because the adjustment was not available earlier but because Petitioner filed the second amended § 2255 motion within the statutory period in 28 U.S.C. § 2255(f) for amending her § 2255 motion.[3]

---

[3] A federal prisoner has one year in which to file a § 2255 motion, including any amendments to the motion. *Mayle v. Felix*, 545 U.S. 644, 654 (2005) (citing to § 2255, ¶ 6 (now § 2255(f)) as providing a "one-year limitation period in which to file a motion to vacate a federal conviction"); *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) ("Any attempt to raise a new claim for relief in a Rule 15 motion to amend pleadings is subject to AEDPA's one-year statute of limitations."). The statute begins to run, as relevant here, on the date a conviction becomes final. *See* 28 U.S.C. § 2255(f)(1). Petitioner's judgment issued on October 9, 2015 [Doc. 244] and she did not file a notice of appeal within the required fourteen days. Fed. R. App. P. 4(b)(1)(A)(i). Thus, upon the lapse of that period, Petitioner's conviction became final. *Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004) (holding that "the judgment becomes final upon the expiration of the period in which the defendant could have appealed to the court of appeals, even when no notice of appeal was filed"). Because the fourteenth day fell on October 24, 2015, a Saturday—a day when federal courthouses are closed, Petitioner had until Monday, October 26, 2015, to file a notice of appeal. *See* Fed. R. Civ. P. 6(a). On that date, Petitioner's conviction became final. Therefore, Petitioner

Even though Petitioner's claim is timely, it fails for several reasons. First, Petitioner provides only the conclusory statement that her role in the scheme to purloin funds from the United States Treasury was "limited," without any supporting facts. Petitioner must allege facts, not conclusions, and a claim without substantiating allegations of fact lack legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959).

Second, despite the conclusory aspect of the claim, the Court understands that Petitioner is seeking relief based on Amendment 794 to USSG § 3B1.2, a sentencing guideline that provides for a two-level decrease in the offense level if a "defendant was a minor participant in any criminal activity." As discussed earlier, a request for a sentence reduction, which is what Petitioner seeks, generally must be presented in a motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(2). Petitioner's request does not state a cognizable claim that qualifies for § 2255 review.

Even if review of Petitioner's claim were appropriate in a § 2255 motion, Amendment 794 is a "clarifying amendment." *United States v. Carter*, 662 F. App'x 342, 349 (6th Cir. 2016). If a petitioner does not attack her sentence on direct appeal (and Petitioner did not), "a clarifying amendment may provide the basis for § 2255 relief only if it brings to light a 'complete miscarriage of justice.'" *Diaz v. United States*, No. 16-6834, 2017 WL 6569901, at *1 (6th Cir. June 23, 2017) (quoting *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996)). "A prisoner may challenge a sentencing error as a 'fundamental defect' on collateral review when [s]he can prove that [s]he is either actually innocent of h[er] crime or that a prior conviction used to enhance h[er] sentence has been vacated." *Spencer v. United States*, 773 F.3d 1132, 1139 (11th Cir. 2014). Nothing alleged

had one year from October 26, 2015, to file a timely § 2255 motion and any amendments to the motion, and she has done so with respect to her second motion to amend, filed on August 30, 2016 [Doc. 326-1], under the "prison mailbox rule" in *Houston v. Lack*, 487 U.S. 266 (1988). *See Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999) (applying *Houston*'s "prison mailroom filing rule" to § 2255 motion).

by Petitioner furnishes a basis for finding that a miscarriage of justice will occur if she is not given a minor-role adjustment. Therefore, Petitioner's argument that she is entitled to a sentence reduction pursuant to Amendment 794 is without merit.

## IV.    CONCLUSION

For the reasons discussed in this memorandum opinion, Petitioner's motion to amend [Doc. 319] will be **DENIED** as moot because the motion was granted previously [Doc. 315], and her § 2255 motion to vacate and her first and second amended § 2255 motions [Docs. 293, 319, 326] will be **DENIED** and **DISMISSED**.

## V.    CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).

A certificate of appealability should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack*, 529 U.S. at 484. Those petitioners whose claims have been rejected on a procedural basis must demonstrate that reasonable jurists would debate the correctness of the Court's procedural ruling. *Id.*; *Porterfield*

*v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001)  Having examined each of Petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of such claims were debatable or wrong.  Therefore, the Court will **DENY** issuance of a certificate of appealibility.

A separate judgment will enter.

**IT IS SO ORDERED.**

ENTER:


_____
s/ Leon Jordan
United States District Judge